1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6   LARRY LLOYD,

7                          Plaintiff,

8          v.

9   MARK RUFENER ET. AL.,

10                         Defendants.

Case No. C17-5627-BHS-TLF

REPORT AND RECOMMENDATION

NOTED FOR: **FEBRUARY 8, 2019**

11          The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

12   States Magistrate Judge Theresa Fricke. Plaintiff Larry Lloyd, proceeding *pro se* and *in forma*

13   *pauperis*, initiated this civil rights action. Before the Court is defendants Sergeant Fitzwater's

14   and Corrections Officer Lewis' motion to dismiss (Dkt. 30), Nurse Senovia Rivas' motion to

15   dismiss (Dkt. 69), and plaintiff's "Order to Show Cause for An Preliminary Injunction and a

16   Temporary Restraining Order" (Dkt. 73).

17          For the reasons discussed below, the Court recommends that plaintiff's motion for

18   preliminary injunction and temporary restraining order (Dkt. 73) be **DENIED**. Furthermore, the

19   Court recommends defendants' motions to dismiss (Dkts. 30, 69) be **GRANTED**. However, the

20   undersigned recommends that: (1) plaintiff's due process, access to courts, and 42 U.S.C.

21   §1985(3) claims against defendants Fitzwater and Lewis, and plaintiff's claims under 42 U.S.C.

22   §§ 1997a and 1997d against defendants Fitzwater, Lewis and Rivas, be dismissed with prejudice

23   and without leave to amend; (2) plaintiff's First Amendment retaliation claims against

24
25

defendants Fitzwater, Lewis, and Rivas, and plaintiff's inadequate medical care claim against

defendant Rivas be dismissed without prejudice and without leave to amend; and (3) plaintiff's

inadequate medical care claim against defendants Fitzwater and Lewis be dismissed without

prejudice and with leave to file a second amended complaint within 30 days of the order

adopting the Report and Recommendation.

## BACKGROUND

Plaintiff filed his original complaint in August 2017, naming Mark Rufener, Kitsap

County Jail (KCJ) Chief; ConMed Healthcare Management, Inc.; and "Nurse Senovia," whom

the plaintiff identifies as a contract employee with ConMed (a company that allegedly delivers

healthcare services at the KCJ Medical Facility). Dkt. 9. The Court issued an order declining to

serve the complaint and providing plaintiff an opportunity to amend. Dkt. 10. In that order, the

Court noted that plaintiff alleged that Mark Rufener "cultivated a policy or custom" that chills

his right to file grievances but that plaintiff presented no facts regarding the alleged policy or

custom and fails to describe what the policy entails or how it chills his ability to file grievances.

*Id.*

Plaintiff filed an amended complaint naming defendants Fitzwater and Lewis, as well as

"Nurse Senovia." Dkt. 14. Plaintiff alleges he filed numerous grievances related to broken

electronics, frequent jail "lock downs" as well as the grievance process itself. Dkt. 14, at 16.

Plaintiff's amended complaint alleges as one "claim of action" that "on or about September 9,

2016 through October 3, 2016, [defendant] Fitzwater repeatedly engage in a serious pattern of

Abuse of Process of Plaintiff Lloyd's Federally protected grievance activity, Sgt. Fitzwater

repeatedly violates Lloyd's First and Fourteenth Amendment Rights of Freedom of Speech

Clauses, as well as conspire with Lt. Sapp and Classification c/o Lewis to chill plaintiff Lloyd's

1    Grievance Appeals by rejecting Lloyd's Appeal Grievances at Level 1-2 Lt. Sapp or level-3

2    Chief Rufener Appeal Stage preventing enjoyment of exhaustion." Dkt. 14, Amended

3    Complaint, at 7.

4    Plaintiff's amended complaint alleges another "claim of action" that "on or about May

5    31, 2017 through October 1, 2017, c/o Lewis knowingly and intentionally engaged in deliberate

6    acts of conspiracy with Sgt. Fitzwater c/o Lewis personally threaten Plaintiff Lloyd to file a

7    federally protected grievance because plaintiff sought c/o Lewis' assistance and possible

8    consideration for medically approved housing and relocation within the Kitsap County Jail

9    (KCJ)." *Id.*, at 10. Plaintiff states that "c/o Lewis immediately after threatening Plaintiff Lloyd to

10   file a grievance went directly to the grievance coordinator Sergeant Fitzwater and relayed

11   Plaintiff Lloyd contact and communication regarding a possible medical solution and that c/o

12   Lewis and Sgt. Fitzwater have repeatedly engaged in interference with Plaintiff Lloyds active

13   protective activity and engagement with the court." *Id.*

14   In the body of his amended complaint plaintiff alleges generally that defendant Fitzwater

15   violated his rights and conspired with defendant Lewis by "rejecting appeal grievances." Dkt. 14,

16   at ¶2. Plaintiff alleges the responses he received to his grievances from defendant Fitzwater

17   "violated [plaintiff's] rights to adequate response to all grievance issues addressed in

18   grievances." Dkt. 14, at ¶23.

19   Plaintiff contends defendant Fitzwater improperly "rejected" some of his grievances

20   thereby preventing him from appealing those grievances. *Id.*, at 19-21. Plaintiff also indicates

21   that in response to some of his grievances defendant Fitzwater instructed plaintiff to appeal his

22   grievance responses rather than file new grievances on the same issue. *Id.*, at ¶56. Plaintiff

23   alleges defendant Fitzwater declined to excuse plaintiff's late appeals when plaintiff filed a new

24

25

grievance instead of appealing and then filed his appeals late. Dkt. 14, Amended Complaint, at ¶¶56, 58. Plaintiff also alleges that, in general, the grievance system responses do not identify the staff member who responded, and that on one occasion a grievance (assigned to an individual who is not named as a defendant) went unanswered for a year. *Id.*, at ¶18, 43-44. Plaintiff also states defendant Fitzwater inserted "negative quotes" in his responses to plaintiff's grievances. *Id.*, at 68.

Plaintiff alleges defendant Lewis "threaten plaintiff Lloyd to file a grievance because plaintiff was seeking some form of resolution in relation to medical housing/placement in KCJ due to plaintiff acute broken leg injury plaintiff was seeking less restricted environment to engage in exercise[.]" *Id.*, at ¶¶63-64. Plaintiff indicates he asked defendant Lewis if he could get out of his cell from 3:30-10pm. *Id.* Plaintiff alleges that defendant Fitzwater documented in response to his medical complaint that plaintiff was not getting out of his cell at night and "medical has no say over when you are out of your cell." *Id.*, at 65-66. Plaintiff alleges defendant Fitzwater also "conspired" with defendant Lewis "about Lloyd wanting to be allowed out his cell in the evening hours due to medical reasons." *Id.* Plaintiff alleges defendants Fitzwater's and Lewis' actions violated his First, Eighth and Fourteenth Amendment rights under 42 U.S.C. §1983 and 42 U.S.C. §1985. He also brings claims under 42 U.S.C. §1997a and §1997d.

Plaintiff's amended complaint alleges defendant Rivas retaliated against him for filing grievances by stopping his pain medication on several occasions. Dkt. 14, at 34-36. Plaintiff also alleges defendant Rivas violated his constitutional rights by scheduling his follow up appointment with an outside orthopedic specialist six weeks instead of four weeks after he was originally treated for a broken leg. Dkt. 14, at 36. Plaintiff alleges defendant Rivas' actions violated his First, Eighth and Fourteenth Amendment rights.

In support of their motions to dismiss, defendants Fitzwater, Lewis, and Rivas argue that plaintiff has failed to allege any facts giving rise to a deprivation of his constitutional rights. Dkts. 30, 69. Defendants Fitzwater, Lewis and Rivas further argue that plaintiff's claims under 42 U.S.C. §1997a and §1997d are improper because the subsections do not provide a private right of action. Dkt. 30, at 1-2. Plaintiff filed responses to defendants' motions and defendants filed replies. Dkts. 53, 56, 76, 79.

## DISCUSSION

### Plaintiff's Motion for Preliminary Injunction/Temporary Restraining Order (TRO)

Plaintiff seeks an order from the Court directing "defendants successors in office, agents and employees and all other persons acting in concert with Sgt. Billingsley participation 'allow plaintiff Larry Lloyd' to have access to a private and direct phone line mainly for booking for attorney calls with defendants attorneys[.]" Dkt. 73, at 2. Plaintiff also seeks an order directing that he be allowed access to the law library more than once a week for two hours because he has a high volume of litigation. *Id.*, at 3.

Injunctions are "to be used sparingly, and only in a clear and plain case." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quoting *Irwin v. Dixon*, 50 U.S. 10, 33, 13 L. Ed. 25, 9 How. 10 [1850]); *see also Sampson v. Murray*, 415 U.S. 61, 83 (1974). The test for determining whether a plaintiff has made a sufficient showing for the Court to grant preliminary injunctive relief[1] is:

> (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). In the alternative, the plaintiff may obtain such relief by showing either: (a) a combination of likely success on the merits and the

---

[1] The standard for determining whether to grant a temporary restraining order is the same as that for determining whether to grant a preliminary injunction. *Verified Nutrition, LLC v. Sclar*, 2017 WL 4785948, at *2 (C.D. Cal. Oct. 23, 2017) (quoting *Brown Jordan Intern. V. Mind's Eye Interiors, Inc.*, 236 F.Supp.2d 1152, 1154 (D. Haw. 2002)).

possibility that he or she will suffer irreparable injury; or (b) that serious questions have been raised as to the merits of the plaintiff's claims, and the balance of hardships tips sharply in his or her favor. *Id.*

The focal point of both tests, however, is the existence and degree of irreparable injury. *Oakland Tribune, Inc., v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985). If the party seeking preliminary injunctive relief has not shown irreparable harm, the request for such relief may be denied on that basis alone. *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011).

Here, plaintiff fails to establish he is likely to suffer irreparable harm in the absence of preliminary relief. Plaintiff seeks a Court order directing that he be provided access to a private phone line in order to contact defense counsel and that he be given additional library time. However, plaintiff fails to offer any facts to indicate he will suffer irreparable harm absent such preliminary relief. Because plaintiff fails to show irreparable harm, his request for preliminary injunctive relief should be denied on that basis alone. *Ctr. for Food Safety*, 636 F.3d at 1174.

The Court also notes that plaintiff has also not demonstrated a likelihood of success on the merits. As discussed further below, the Court is also recommending that defendants' motions to dismiss be granted and that plaintiff be given leave to amend with respect to only one claim.

Finally, the Court notes that a preliminary injunction is only intended to give intermediate relief of the same character that will be granted should the party seeking the injunction succeed on the underlying claims. *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945); *Pacific Radiation Oncology, LLC v. Queen's Medical Center,* 810 F.3d 631, 636 (9th Cir. 2015). Thus, a district court lacks authority to grant injunctive relief to address matters that have no relationship or nexus to the claims set forth in the underlying complaint. *Pacific*

1    *Radiation Oncology*, 810 F.3d at 635-638. Here, plaintiff's requests for an order directing access

2    to a private phone line to contact defense counsel and for additional library time are unrelated to

3    the substantive claims raised in his complaint. Accordingly, plaintiff's motion should be denied

4    on this basis as well.

5    **Defendants' Motions to Dismiss**

6        A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be

7    granted only if the complaint, with all factual allegations accepted as true, fails to "raise a right

8    to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

9    Mere conclusory statements in a complaint and "formulaic recitation[s] of the elements of a

10   cause of action" are not sufficient. *Id.*; *Chavez v. United States*, 683 F.3d 1102, 1108-09 (9th Cir.

11   2012). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

12   sufficient facts alleged under a cognizable legal theory." *Ballistreri v. Pacifica Police Dept.,* 901

13   F.2d 696, 699 (9th Cir. 1990).

14       A complaint must contain a "short and plain statement of the claim showing that the

15   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the

16   statement need only give the defendant fair notice of what the . . . claim is and the grounds upon

17   which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted).

18   However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me

19   accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

20       While the Court must accept all the allegations contained in a complaint as true, the Court

21   should not accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of

22   the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*;

23   *see also Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and

24

25

1    mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims);

2    *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe a complaint

3    liberally, such construction "may not supply essential elements of the claim that were not

4    initially pled." *Pena*, 976 F.2d at 471.

5    **I.    42 U.S.C. § 1983**

6        In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he

7    suffered a violation of rights protected by the Constitution or created by federal statute, and (2)

8    the violation was proximately caused by a person acting under color of state law. *See Crumpton*

9    *v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is to identify the

10   specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To

11   satisfy the second prong, a plaintiff must allege facts showing how individually named

12   defendants caused, or personally participated in causing, the harm alleged in the complaint. *See*

13   *Arnold v. IBM,* 637 F.2d 1350, 1355 (9th Cir. 1981).

14       **A.    Fourteenth Amendment - Due Process Claim**

15       Plaintiff asserts the grievance process is deficient and also alleges defendants Fitzwater

16   and Lewis failed to: respond at all, properly respond, or properly process certain grievances.

17   These challenges to the grievance process fail to state a due process claim under the Fourteenth

18   Amendment.

19       Even during incarceration, prisoners retain their Fourteenth Amendment due process

20   protections. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). In adopting prison

21   regulations, "States may under certain circumstances create liberty interests which are protected

22   by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

23

24

25

1    There is no constitutional right to a prison grievance system. *Mann v. Adams*, 855 F.2d

2    639, 640 (9th Cir.1988); *Ramirez*, 334 F.3d at 860; *Stewart v. Block*, 938 F.Supp. 582

3    (C.D.Cal.1996); *Hoover v. Watson*, 886 F.Supp. 410 (D.Del.1995) (*aff'd,* 74 F.3d 1226). If the

4    state elects to provide a grievance mechanism, alleged violations of the procedures does not give

5    rise to § 1983 claims. *Silva v. Gregoire*, 2007 WL 1814073 at *6 (W.D. Wash. 2007); *Hoover v.*

6    *Watson*, 886 F.Supp. 410, 418 (D.Del.1995) (*aff'd,* 74 F.3d 1226); *Brown v. Dodson,* 863

7    F.Supp. 284, 285 (W.D.Va. 1994); *Allen v. Wood*, 970 F.Supp. 824, 832 (E.D.Wash. 1997) (The

8    grievance process is an internal prison process for handling prison complaints and does not

9    involve substantive rights).

10    Because plaintiff lacks a separate constitutional entitlement to any grievance procedure,

11    plaintiff's claims with respect to the grievance process generally and against defendants for

12    failing to respond to, failing to properly respond to, or failed to properly process certain

13    grievances fail. Therefore, plaintiff has not stated a claim for which relief can be granted for a

14    violation of due process. *See Harris v. James*, 2017 WL 5198196, at *4, 16-cv-05044-BHS-

15    DWC (W.D. Wash. 2017) ("a stand-alone claim based on a deprivation of the grievance

16    procedure does not implicate due process.").

17    Furthermore, the Court should hold that plaintiff's claims are not capable of being cured

18    by granting further leave to amend. *See Plumeau v. Sch. Dist. # 40 Cnty. of Yamhill*, 130 F.3d

19    432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would

20    be futile); *Arceo v. Salinas*, 2016 WL 1073257,  No. 11-cv-2396 (E.D. Cal., Mar. 18, 2016)

21    (plaintiff's claims that defendants failed to process grievances or address grievances in a certain

22    way failed to state a due process claim as a matter of law; dismissal without leave to amend

23

24

25

1    appropriate as amendment would be futile). Accordingly, the Court should dismiss plaintiff's due

2    process claims with prejudice and without leave to amend.

3    **B.    First and Fourteenth Amendment – Access to Courts**

4    Plaintiff's amended complaint also alleges that defendants Fitzwater's and Lewis' failure

5    to properly process and address his grievances violated his constitutional rights by preventing

6    him from exhausting administrative remedies. The Prison Litigation Reform Act requires

7    prisoners to exhaust administrative remedies prior to filing suit. 42 U.S.C. § 1997e(a). However,

8    plaintiff's claim that defendants have violated his constitutional right to meaningful access to the

9    courts is not supported by plausible facts and he has failed to state a claim.

10    Under the First and Fourteenth Amendments to the Constitution, state prisoners have a

11    right of meaningful access to the courts. *Lewis v. Casey,* 518 U.S. 343, 346, 116 S.Ct. 2174, 135

12    L.Ed.2d 606 (1996); *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Bounds v. Smith*,

13    430 U.S. 817, 821 (1977). A prisoner must show some actual injury resulting from a denial of

14    access to the courts in order to allege a constitutional violation. *Lewis*, 518 U.S. at 349. An actual

15    injury consists of some specific instance in which an inmate was actually denied meaningful

16    access to the courts. *Id.*, at 350–55.

17    Here, plaintiff asserts that defendants have prevented him from exhausting his remedies

18    by failing to properly process or respond to his grievances. However, plaintiff does not allege

19    that this has actually prevented him from pursing any claims in court. And even if plaintiff were

20    to allege that defendants' actions prevented him from exhausting his administrative remedies and

21    thereby prevented him from filing a federal lawsuit, a prison official's failure to respond or to

22    properly process a prisoner's administrative grievance would excuse that prisoner's failure to

23    exhaust his administrative remedies. *See Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010)

24

25

1  (prisoner's failure to timely exhaust administrative remedies is excused when prisoner takes

2  reasonable and appropriate steps to exhaust but was precluded from exhausting through no fault

3  of his own).

4       Accordingly, the Court should dismiss plaintiff's claim regarding access to courts,

5  because he fails to state a claim. Furthermore, the Court should hold that plaintiff's claims are

6  not capable of being cured by granting further leave to amend. *See Plumeau*, 130 F.3d at 439.

7  Accordingly, the Court should dismiss these claims with prejudice and without leave to amend.

8       **C.**    **First Amendment - Retaliation**

9       Plaintiff alleges that defendants Fitzwater and Lewis failed to properly process or

10  "adequately respond" to his grievances and "chilled" his right to file grievances. Dkt. 14,

11  Amended Complaint at ¶2.

12       To prevail on a retaliation claim, a plaintiff must allege and prove the defendants

13  retaliated against him for exercising a constitutional right and the retaliatory action did not

14  advance legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v.*

15  *Gomez*, 108 F.3d 265, 267 (9th Cir. 1997). A prisoner suing a prison official under § 1983 for

16  retaliation for engaging in protected speech must allege "the type of activity he engaged in was

17  protected under the first amendment and that the state impermissibly infringed on his right to

18  engage in the protected activity." *Rizzo v. Dawson,* 778 F.2d 527 (9th Cir. 1983).

19                 Within the prison context, a viable claim of First Amendment retaliation

20  entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise

21  of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

22  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "Mere speculation that defendants

23  acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

24

25

1    Plaintiff has a First Amendment right to file grievances but he does not have a free

2    standing constitutional right to a particular grievance process. *See Brodheim v. Cry*, 584 F.3d

3    1262, 1269 (9th Cir. 2009); *Mann*, 855 F.2d at 640. The fact that plaintiff finds fault with the

4    grievance process and is dissatisfied with the responses he received to his grievances does not

5    establish retaliation on the part of defendants. Plaintiff does not allege that the defendants

6    interfered with or prevented him from filing grievances, only that he was dissatisfied with

7    defendants' responses.

8    Plaintiff alleges some of his grievances were "rejected" but does not provide facts to

9    plausibly show the defendants rejected the grievances in retaliation for his exercising his First

10   Amendment right to file grievances -- or even that the rejections were improper. Dkt. 14,

11   Amended Complaint, at 19-27. The only specific facts plaintiff offers with respect to any of the

12   rejections is that defendant Fitzwater rejected new grievances with respect to the same issue

13   addressed in prior grievances and instructed plaintiff to appeal the denial of his grievances rather

14   than filing new grievances raising the same issue. *Id.*, at 24-27.

15   Plaintiff also states that defendant Fitzwater denied some of his appeals as untimely when

16   plaintiff alleges he accidentally filed new grievances instead of appealing and subsequently filed

17   untimely appeals. *Id.* Again, while plaintiff disagrees with this response, he fails to state any

18   facts to indicate these actions were retaliatory or even improper.

19   Plaintiff alleges generally that defendants' actions have "chilled" his "grievance appeals"

20   but fails to allege any retaliatory action; he simply disagrees with the grievance responses he has

21   received. Nor has plaintiff alleged any facts to indicate defendants lacked a legitimate

22   penological reason for their actions. Furthermore, plaintiff was given an opportunity to amend

23   his complaint to provide more facts with respect to his claim that KCJ staff have chilled his right

24

25

to file grievances. Dkt. 10, at 3. Plaintiff was instructed that he must describe "how [defendants][2] have chill[ed] his ability to file grievances" as well as "who violated his rights, when they violated his rights, and how this violation caused harm." *Id.* Plaintiff has again failed to allege sufficient facts to state a claim in his amended complaint nor does his response to defendants' motion to dismiss indicate he may be capable of doing so.

Plaintiff also alleges in his amended complaint that defendant Lewis "threatened him to file a grievance" when he asked about changing his medical housing/placement to a less restrictive environment or getting out of his cell in the evening due to his broken leg. Dkt. 14, at ¶¶63-64. Plaintiff alleges that defendant Fitzwater documented in response to a medical complaint that plaintiff was not getting out of his cell at night and "medical has no say over when you are out of your cell." *Id.*, at ¶¶65-66. Plaintiff alleges defendant Lewis and Fitzwater "conspired" "about Lloyd wanting to be allowed out his cell in the evening hours due to medical reasons." *Id.* In response to defendants' motion, plaintiff states that defendants failed to "investigate or contact medical per medical policy, but state actors took adverse action against an inmate because of Lloyd protected rights/privileges medical housing activity that such action chilled the KCJ medical policy and procedures Lloyd was engaged in reassignment." Dkt. 45, at 24.

Even if the Court considered the additional allegations in plaintiff's response to defendants' motion, plaintiff fails to state a claim for retaliation. Plaintiff fails to identify what, if any, protected constitutional activity he was engaged in, nor does he allege any facts to indicate

---

[2] The Court notes that plaintiff's original complaint named Mark Rufener, Chief of KCJ, as a defendant and alleged he had cultivated a policy that chills his right to file grievances. Dkt. 9. In his amended complaint plaintiff named defendants Fitzwater and Lewis instead of Mark Rufener but he still fails to allege facts to state a constitutional claim under the theory that defendants' actions chilled his right to file grievances.

defendants' actions were taken in retaliation for his engaging in that protected activity. Plaintiff alleges no facts to indicate defendants' actions did not advance legitimate penological goals, nor does he state facts demonstrating how his First Amendment rights were actually chilled by defendants' actions. Plaintiff states that defendant Lewis "threatened him to file a grievance" and infers that defendant Lewis told him to file a grievance if he was unhappy with his response to his request to be allowed outside his cell in the evening or to be moved to different housing. Again, while plaintiff clearly disagreed with the responses he received either verbally or in writing from defendants Lewis and Fitzwater, he states no facts to establish those responses were made in retaliation for his exercise of a constitutional right or were even otherwise improper.

The undersigned recommends that defendants' motion be granted and that these claims be dismissed without prejudice and without leave to amend.[3]

With respect to defendant Rivas, plaintiff alleges she stopped his pain medication on several occasions in retaliation for his filing grievances related to his medical care. Dkt. 14, at 34-41. Plaintiff alleges his medications were stopped on May 5, 2017, July 10, 2017, and July 23, 2017. *Id.* Plaintiff also indicates that he filed numerous kites and grievances related to his medical care during that period and that defendant Rivas stopped his medications in retaliation for those grievances. *Id.* He also alleges that at some unspecified time defendant Rivas requested

---

[3] Given that plaintiff was previously given an opportunity to amend his complaint and that he fails to offer additional relevant facts in opposition to defendants' motion indicating he may be able to state sufficient facts to state a plausible claim for retaliation, the Court recommends dismissal without prejudice and without leave to amend. *See Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir.1986) ("The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint."); *see also Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and had discussed with plaintiff the substantive problems with his claims), *amended by* 234 F.3d 428, *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007); *Plumeau*, 130 F.3d at 439 (denial of leave to amend appropriate where further amendment would be futile).

that he stop writing all the kites and grievances because "she has to read all of them" and she was "not being deliberately indifferent." *Id.*, at 36.

To state a claim for retaliation, the plaintiff must allege facts that establish an actual link between his exercise of constitutional rights and the alleged retaliatory action. *See Pratt v. Rowland*, 65 F.3d 802, 807-810 (9th Cir. 1995). While the proximity of the time between these two events can properly be considered as circumstantial evidence of retaliatory intent, suspect timing alone is not sufficient to establish the crucial factual link. *Id.*, at 808. Thus, the fact that plaintiff had filed numerous kites and grievances related to his medical care during the same general time period that his medication was stopped is not sufficient in and of itself to state a retaliation claim and plaintiff fails to state additional facts linking the medication stoppages with his grievances. *See Wood*, 753 F.3d at 905 (mere speculation of retaliation is not sufficient).

Plaintiff also fails to allege or set forth facts to demonstrate the absence of legitimate correctional goals for the medication stoppages, and, in fact, plaintiff's own exhibits (which he cites to as support for his complaint) indicate that there was such a legitimate reason. *See* Dkt. 14, at 80, 84; *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("a court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment.") (quoting *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir. 1994). Specifically, the grievance responses plaintiff received to his complaints about medication stoppages indicate that his medications were stopped because his prescriptions expired, not because they were intentionally withdrawn in retaliation for his grievances. Dkt. 14, at 80, 84. The grievance responses state that,

> It is protocol to only prescribe for a certain amount of time and a prescriber can determine after that if you should continue. Having said that, you must follow up with them, send a medical request, when you know that your medications are about to come to an end. Your medications are not something that inmates are prescribed for long

1

periods of time, for example naproxen. It was not a 'deliberate act directed to inflict pain', this is protocol for everyone.

2

*Id.*

3

Plaintiff's other exhibits also tend to support this explanation. First, with respect to the

4

May 5, 2017, medication stoppage, his naproxen, rather than being intentionally withdrawn,

5

"expired without notice"; exhibits to the Amended Complaint indicate that when he sent in a

6

health services request on May 5, 2017, he received a response the same day that a medical

7

provider would review his request and that he might need to be seen in the clinic. Dkt. 14,

8

Amended Complaint at 35, 88. His naproxen prescription was renewed a few days later. Dkt. 14.

9

Plaintiff does not allege a medication stoppage in June 2017, and his exhibits show he sent a

10

health services request for a refill of naproxen on June 6, 2017, and was prescribed a 30 day refill

11

the same day. Dkt. 14, at 90.

12

Plaintiff's exhibits also indicate he sent another health services request on July 8, 2017,

13

alleging his medication had again been stopped in retaliation for filing grievances.[4] Dkt. 14, at

14

92. However, given that plaintiff's previous prescription for a 30 day supply was due to run out

15

on July 7, 2017, this exhibit also tends to support the explanation that his prescription simply

16

expired, not that it was withdrawn in retaliation for plaintiff's grievances. Plaintiff's July 8,

17

2017, health services request indicates that on July 9, 2017, his naproxen was refilled for 14 days

18

and that "after 14 days you may purchase ibuprofen from the commissary." Dkt. 14, at 92.

19

Plaintiff's exhibits also indicate he sent another health services request on July 25, 2017,

20

alleging he had been denied naproxen for 4 days in retaliation for filing grievances. Dkt. 14, at

21

94. However, given that plaintiff's previous prescription for 14 days was due to run out on July

22

23

24

25

---

[4] The Court notes that plaintiff's amended complaint alleges the second medication stoppage occurred July 10, 2017. Dkt. 14. However, plaintiff's exhibits indicate this second stoppage occurred a few days earlier, in or around July 8, 2017, and plaintiff's response papers appear to acknowledge this as well. Dkt. 76, at 21.

22, 2017, this exhibit also supports the explanation that his prescription simply expired, not that it was withdrawn in retaliation for plaintiff's grievances.

In sum, plaintiff fails to support his claim with facts plausibly showing that defendant Rivas stopped plaintiff's medication in retaliation for plaintiff's filing grievances. Rather, the exhibits attached to plaintiff's amended complaint—which are "part of the pleading for all purposes" under Rule 10(c) — reflect that there was a legitimate penological reason for the medication stoppages in that, rather than being intentionally withdrawn in retaliation, his medication prescriptions simply expired. *See Hartmann v. California Dept. of Corrections and Rehabilitation*, 707 F.3d 1114, 1124, 1129 (9th Cir. 2013).

In light of the fact that plaintiff's own pleading presents facts negating the necessary elements of his retaliation claim, the Court concludes that amendment here would be futile. *Id.* (affirming district court's dismissal of claim and denial of leave to amend as futile where plaintiff failed to support claim of religious discrimination with plausible facts and where plaintiff's own exhibits showed reasoned and vetted, rather than discriminatory, denial of plaintiff's requests).[5] The Court should dismiss these claims without prejudice and without leave to amend.

### D.    Eighth Amendment or Fourteenth Amendment – Medical Indifference

Plaintiff's amended complaint alleges defendants Fitzwater, Lewis and Rivas also violated his Eighth Amendment rights.

---

[5] The Court notes that, in response to defendant Rivas' motion, plaintiff alleges defendant Rivas was "fired" due to her retaliatory actions in stopping his pain medication. Dkt. 76, at 23. However, plaintiff offers no facts whatsoever to support this conclusory allegation and, without factual support, his bare allegation is insufficient to state a retaliation claim or even to warrant granting plaintiff another opportunity to amend this claim.

With respect to defendant Rivas, plaintiff alleges she delayed scheduling his follow-up appointment with an outside orthopedic specialist. Dkt. 14, Amended Complaint, at 36-37. He alleges his follow up appointment should have been scheduled for four weeks from April 25, 2017, but that it was not scheduled until June 7, 2017, six weeks later. *Id.*

With respect to defendants Fitzwater and Lewis, plaintiff alleges they violated his rights by "engaging in deliberate acts of conspiracy" and "c/o Lewis personally threaten plaintiff Lloyd to file a federally protected grievance because plaintiff sought [defendant] Lewis assistance and possible consideration for medically approved housing, and relocation[.]" Dkt. 14, at 4-5. Plaintiff goes on to state that defendant Fitzwater "interfered with plaintiff Lloyd's medical complaint before the complaint had been filed with (HSA) because he conspired with c/o Lewis about Lloyd wanting to be allowed out his cell in the evening hours due to medical reasons." Dkt. 14, at 29. Plaintiff alleges defendant Fitzwater "inserted negative quotes on the grievances before they are sent to medical (HSA)" such as "Lloyd is referring to that grievance in an attempt to illustrate retaliation by medical staff causing undo pain and suffering caused by deliberat[e] indifferen[ce]." *Id.* Defendants moved to dismiss these claims on the grounds that plaintiff had not plead any facts to suggest defendants personally knew of or disregarded an 'excessive risk' to plaintiff's health and safety." Dkt. 30, at 8.

It is unclear from plaintiff's amended complaint whether at the time of these alleged incidents he was a pretrial detainee or a post-conviction prisoner. In order to state a constitutional claim for lack of medical care, a post-conviction prisoner must include factual allegations that a state actor acted with deliberate indifference to his serious medical needs. A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v.*

1    *Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). First, the alleged deprivation must be, objectively,

2    "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A "serious medical need"

3    exists if the failure to treat a prisoner's condition would result in further significant injury or the

4    unnecessary and wanton infliction of pain contrary to contemporary standards of decency.

5    *Helling v. McKinney*, 509 U.S. 25, 32–35 (1993); *McGuckin*, 974 F.2d at 1059.

6        Second, the prison official must be deliberately indifferent to the risk of harm to the

7    inmate. *Farmer*, 511 U.S. at 834. An official is deliberately indifferent to a serious medical need

8    if the official "knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837.

9    In assessing whether the official acted with deliberate indifference, a court's inquiry must focus

10   on what the prison official actually perceived, not what the official should have known. *See*

11   *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). Moreover, a plaintiff cannot succeed on

12   the merits based on a claim of negligence or his own general disagreement with the treatment he

13   has received. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hutchinson v. United States*, 838 F.2d

14   390, 394 (9th Cir.1988).

15       If plaintiff was a pre-trial detainee at the time of the events giving rise to his claims, his

16   claims are instead governed by the Fourteenth Amendment. The elements of a pre-trial

17   detainee's medical care claim against an individual defendant under the due process clause of the

18   Fourteenth Amendment are (1) the defendant made an intentional decision with respect to the

19   conditions under which the plaintiff was confined, (2) those conditions put the plaintiff at

20   substantial risk of suffering serious harm, (3) the defendant did not take reasonable available

21   measures to abate that risk, even though a reasonable official in the circumstances would have

22   appreciated the high degree of risk involved, making the consequences of defendant's conduct

23

24

25

1   obvious, and (4) by not taking such measures, the defendant caused the plaintiff's injuries.

2   *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

3          Under either standard, the allegations in plaintiff's amended complaint against defendants

4   Fitzwater, Lewis and Rivas fail to state a constitutional claim with respect to his medical care.

5   With respect to defendant Rivas, even under the less demanding Fourteenth Amendment

6   standard, plaintiff alleges no facts to suggest that a two-week delay of his follow-up appointment

7   put the plaintiff at substantial risk of suffering serious harm. Nor does he allege facts to indicate

8   a reasonable official in the circumstances would have appreciated that there would be a high

9   degree of risk involved in scheduling a follow-up appointment for six weeks instead of four

10  weeks. Plaintiff does not allege there were any complications with his injury during this period

11  or that his condition substantially worsened such that a reasonable official would have

12  appreciated a high degree of risk in a two week delay. Furthermore, plaintiff does not allege any

13  facts to indicate that by not taking such measures, the defendant caused plaintiff's injuries. In

14  fact, plaintiff does not allege that the two week delay in scheduling his follow-up appointment

15  caused him any additional injury whatsoever.

16         Plaintiff was previously given an opportunity to amend his complaint. Furthermore,

17  plaintiff fails to offer additional relevant facts in opposition to defendants' motion indicating he

18  may be able to state sufficient facts to state a plausible constitutional claim related to the two

19  week delay in scheduling a follow-up medical appointment. Accordingly, the Court should

20  dismiss this claim without prejudice and without leave to amend. *See Fid. Fin. Corp.*, 792 F.2d at

21  1438.

22         With respect to defendants Lewis and Fitzwater, plaintiff's allegations amount to a

23  disagreement with their responses to his requests that he be allowed out of his cell during the

24

25

1    evening. Furthermore, it is unclear how defendant Fitzwater's responses to plaintiff's grievances,

2    which plaintiff refers to as "negative quotes" support a constitutional claim of inadequate

3    medical care.[6]

4          However, in opposition to defendants' motion, plaintiff makes additional factual

5    allegations that defendants Lewis and Fitzwater acted with deliberate indifference to his serious

6    medical need in failing to investigate or contact medical (specifically Senovia Rivas), per

7    medical policy, regarding his request to be medically housed for his broken leg. Dkt. 45, at 24.

8    Plaintiff alleges defendant Rivas "has the medical authority to approve recommendations and

9    orders." *Id.*, at 23. Plaintiff contends this resulted in a 28 day delay in his reassignment to

10   medical disability housing and treatment with physical therapy. *Id.* Defendants did not respond

11   to these new factual allegations in their reply.

12         The new factual allegations contained in plaintiff's opposition papers are "irrelevant for

13   Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court *may*

14   *not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

15   opposition to a defendant's motion to dismiss." *Schneider v. California Dept. of Corrections*,

16   151 F.3d 1194, 1197 (9th Cir. 1998) (emphasis added); *see Harrell v. United States,* 13 F.3d 232,

17   236 (7th Cir.1993); *see also,* 2 *Moore's Federal Practice,* § 12.34[2] (Matthew Bender 3d ed.)

18   ("The court may not ... take into account *additional facts* asserted in a memorandum opposing

19   _____

20   [6] The Court notes that plaintiff attaches the grievance response he is referring to with his amended
     complaint. Dkt. 14-1, at 75-76. The grievance alleges retaliation and deliberate indifference by medical
21   staff. *Id.* Read in context, the "negative quote" plaintiff is referring to appears to be a clarification by
     defendant Fitzwater that plaintiff's reference to a prior grievance number within his grievance is "not an
22   appeal [ of the other grievance but, rather,] Lloyd is referring to that grievance in an attempt to illustrate
     retaliation by medical staff causing undo pain and suffering caused by 'deliberate indifference'." *Id.*; *See*
23   *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("a court may consider 'material which is
     properly submitted as part of the complaint' on a motion to dismiss without converting the motion to
24   dismiss into a motion for summary judgment.") (quoting *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.
     1994) (citation omitted).

25

1  the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).")

2  (emphasis added).

3        However, in light of the additional allegations provided in plaintiff's response to

4  defendants' motion, the Court concludes it is possible that plaintiff may be able to overcome the

5  deficiencies of the amended complaint and state a claim under the due process clause, or Eighth

6  Amendment, against defendants Fitzwater and Lewis if he is given leave to amend his complaint.

7  *See Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987) (The Ninth Circuit has

8  "established that a pro se litigant bringing a civil rights suit must have an opportunity to amend

9  the complaint to overcome deficiencies unless it is clear that they cannot be overcome by

10  amendment.").

11        Accordingly, the Court should dismiss without prejudice plaintiff's inadequate medical

12  care claims against defendants Fitzwater and Lewis. But the Court should grant plaintiff leave to

13  amend to attempt to cure the deficiencies of his amended complaint -- limited to these specific

14  medical care claims. If plaintiff files a second amended complaint he must explain whether he

15  was a pretrial detainee or post-conviction prisoner at the time of the events giving rise to these

16  specific medical care claims. Furthermore, he must allege sufficient facts to support every

17  element of his claims under the appropriate standard as set forth above.

18  **II.**    **42 U.S.C. § 1985**

19        Defendants Fitzwater and Lewis also move to dismiss plaintiff's claims under 42 U.S.C.

20  §1985. Plaintiff seems to allege a conspiracy claim under §1985(3).

21        To state a claim under 42 U.S.C. §1985(3), a plaintiff must establish defendants did: "(1)

22  'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of

23  depriving, either directly or indirectly, any person or class of persons of the equal protection of

24

25

1   the laws, or of equal privileges and immunities under the laws.' It must then assert that one or

2   more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of

3   (the) conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived

4   of having and exercising any right or privilege of a citizen of the United States.'" *Griffin v.*

5   *Breckenridge*, 403 U.S. 88, 102–03, 91 S. Ct. 1790, 1798–99, 29 L. Ed. 2d 338 (1971) (quoting

6   42 U.S.C. §1985(3)).

7            "The Supreme Court has made it clear that 42 U.S.C. § 1985(3) is not to be construed as

8   a general federal tort law." *Gerritsen v. de la Madrid Hurtado,* 819 F.2d 1511, 1518–19 (9th

9   Cir.1987). Rather, "[t]he language requiring intent to deprive of *equal* protection, or *equal*

10  privileges and immunities, means that there must be some racial, or perhaps otherwise class-

11  based, invidiously discriminatory animus behind the conspirators' action." *Griffin,* 403 U.S. at

12  102 (emphasis in original); *see also Nakao v. Rushen*, 542 F. Supp. 856, 859 (N.D. Cal. 1982)

13  (class of "state prisoners" not protected under section 1985(3) because there has been no

14  congressional determination that it requires special federal civil rights assistance, and because it

15  does not possess "discrete, insular and immutable characteristics comparable to those

16  characterizing classes such as race, national origin and sex.").

17           Plaintiff has not alleged any class-based discrimination against him in his amended

18  complaint, nor does he raise any substantive allegations to that effect in response to defendants'

19  motion to dismiss. As a result, he has not stated a claim under 42 U.S.C. § 1985(3).

20           Accordingly, the Court should dismiss these claims. Furthermore, the Court should hold

21  that these conspiracy claims are not capable of being cured by granting further leave to amend.

22  *See Plumeau*, 130 F.3d at 439. Accordingly, the Court recommends that defendants' motion to

23

24

25

1    dismiss these claims be granted and plaintiff's claims under 42 U.S.C. § 1985(3) be dismissed

2    with prejudice and without leave to amend.[7]

3    **III.    42 U.S.C. §1997a and §1997d**

4    Defendants Fitzwater, Lewis and Rivas also move to dismiss plaintiff's claims under 42

5    U.S.C. §1997a and §1997d.

6    42 U.S.C. §§ 1997–1997j, "authorizes [the] United States Attorney General to institute

7    civil actions against certain institutions for violating the civil rights of persons confined or

8    residing therein. Subsection j provides that, "the provisions of this subchapter shall in no way

9    expand or restrict the authority of parties other than the United States to enforce the legal rights

10   which they may have pursuant to existing law with regard to institutionalized persons." 42

11   U.S.C. § 1997j. The Ninth Circuit has held that 42 U.S.C. § 1997j precludes a private cause of

12   action under 42 U.S.C. §§ 1997–1997j. *McRorie v. Shimoda*, 795 F.2d 780, 782 n.3 (9th Cir.

13   1986).

14   Plaintiff does not raise any substantive challenges to this branch of defendants' motion to

15   dismiss. Accordingly, the Court should dismiss these claims with prejudice and without leave to

16   amend as the Court "can conceive of no set of circumstances through which the defects in the

17   amended complaint with respect to these claims could be cured by re-pleading." *Christensen v.*

18   *PennyMac Loan Services, LLC*, 988 F.Supp.2d 1036 (D. Minn., Dec. 19, 2013) (granting motion

19   to dismiss for failure to state a claim and dismissing claims with prejudice).

20   **IV.    Second Amended Complaint**

21

22

23   ---
     [7] Plaintiff's complaint does not appear to allege defendant Rivas violated 42 U.S.C. §1985. However, to
     the extent plaintiff intended to allege this claim against defendant Rivas it would also be subject to
24   dismissal for the same reasons.

25

Plaintiff is directed that if he files a second amended complaint in an attempt to cure the deficiencies with respect to his claim of inadequate medical care as against defendants Fitzwater and Lewis, he should present it on the form provided by the Court. The second amended complaint must be legibly rewritten or retyped in its entirety, it should be an original and not a copy, it should contain the same case number, and it may not incorporate any part of the original complaint or amended complaint by reference.

*The second amended complaint will act as a complete substitute for the amended complaint, and not as a supplement. In the second amended complaint, plaintiff may not re-allege claims dismissed from this action. Any new claims raised in the second amended complaint must relate only to the remaining claims alleged in the amended complaint. The only remaining claims relate to plaintiff's allegations of inadequate medical care against defendants Fitzwater and Lewis with respect to his broken leg.*

"Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (*citing* 28 U .S.C. § 1915(g)). Thus, plaintiff may not change the nature of his suit by adding new, unrelated claims in his second amended complaint. *Id*.

*Furthermore, if plaintiff files an amended complaint, plaintiff is directed to use Section IV "Statement of Claim" portion of the complaint form provided by the Court to write out short, plain statements telling the Court: (1) the constitutional right plaintiff believes was violated; (2) the name of the person (defendant) who violated the right; (3) exactly what that*

*person did or failed to do; (4) how the action or inaction of that person is connected to the violation of plaintiff's constitutional rights; and (5) what specific injury plaintiff suffered because of that person's conduct. See Rizzo v. Goode, 423 U.S. 362, 371–72 (1976).*

The Court will screen the second amended complaint to determine whether it contains factual allegations linking each defendant (Fitzwater and Lewis) to the alleged violations of plaintiff's rights. Plaintiff may attach extra sheets to the form provided by the Court if necessary. Furthermore, plaintiff may attach additional documents to support the facts of his claims but he should specify which portion of the document(s) (i.e., page and paragraph) he is relying on to support the specific fact(s) of his claim(s).

*If plaintiff fails to adequately specify the portion of the supporting document(s), the Court may disregard the document(s).*

*If the Court adopts this Report and Recommendation, failure to file a second amended complaint within 30 days of the Court's order adopting the Report and Recommendation will result in the Court recommending dismissal of these claims and the remaining defendants from the action.*

**CONCLUSION**

For the foregoing reasons, the Court recommends that plaintiff's motion for preliminary injunction and temporary restraining order (Dkt. 73) be **DENIED**. Furthermore, the Court recommends defendants' motions to dismiss (Dkt. 30, 69) be **GRANTED**. However, the undersigned recommends that: (1) plaintiff's due process, access to courts, and 42 U.S.C. §1985(3) claims against defendants Fitzwater and Lewis, and plaintiff's claims under 42 U.S.C. §§ 1997a and 1997d against defendants Fitzwater, Lewis and Rivas, be dismissed with prejudice and without leave to amend; (2) plaintiff's First Amendment retaliation claims against

defendants Fitzwater, Lewis, and Rivas, and plaintiff's inadequate medical care claim against

defendant Rivas be dismissed without prejudice and without leave to amend; and (3) plaintiff's

inadequate medical care claim against defendants Fitzwater and Lewis be dismissed without

prejudice and with leave to file a second amended complaint within 30 days of the order

adopting the Report and Recommendation.

The parties have **fourteen (14) days** from service of this Report and Recommendation to

file written objections thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see also* Fed. R. Civ.

P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal.

*Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be

set for consideration on **February 8, 2019**, as noted in the caption.

The Clerk is directed to send a copy of this report and recommendation to plaintiff and

counsel for defendants.

Dated this 9th day of January, 2019.


Theresa L. Fricke
United States Magistrate Judge