UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LARRY LLOYD,

                    Plaintiff,

      v.

SGT FITZWATER, et al.,

                  Defendants.

Case No. C17-5627-BHS-TLF

REPORT AND
RECOMMENDATION

Noted for May 8, 2020

       This matter is before the Court on defendants' motion to dismiss for failure to state a claim (Dkt. 103), plaintiff's motion to file an overlength response brief (Dkt. 110), and defendants' request that plaintiff's response brief be stricken as untimely (Dkt. 112). This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the undersigned recommends that the Court GRANT plaintiff's motion to file an overlength response brief (Dkt. 110), DENY defendants' request to strike plaintiff's response brief as untimely (Dkt. 112), and GRANT defendants' motion to dismiss the complaint (Dkt. 103).

<u>FACTUAL AND PROCEDURAL HISTORY</u>

       Plaintiff's original complaint filed in this case named as defendants Mark Rufener, Kitsap County Jail Chief of Corrections, "Conmed Healthcare Management" (the jail's contracted healthcare provider) and "Nurse Senovia." Dkt. 2. The Court declined to serve plaintiff's original complaint as it failed to state a claim for relief under 42 U.S.C. §

1983 and ordered plaintiff to show cause why his complaint should not be dismissed or file an amended complaint. Dkt. 10. In response to that order plaintiff filed an amended complaint naming Sergeant Fitzwater, Corrections Officer Lewis, and Nurse Senovia as defendants. Dkt. 14. The Court directed service of plaintiff's amended complaint and defendants moved to dismiss. Dkts. 20, 30. The Court issued a Report and Recommendation recommending that defendants' motion to dismiss be granted and plaintiff's claims dismissed but that plaintiff be granted leave to amend only his claims related to inadequate medical care against defendants Lewis and Fitzwater. Dkt. 82. While the Report and Recommendation was pending adoption, plaintiff filed a second amended complaint. Dkt. 87. The Report and Recommendation was subsequently adopted. Dkt. 91.

Defendants moved to dismiss the action pursuant to Federal Rule of Civil Procedure 41(b) based on plaintiff's failure to comply with a court order as plaintiff had failed to file a further amended complaint after the order adopting the Report and Recommendation and dismissing plaintiff's amended complaint. Dkt. 92. The Court denied defendants' motion to dismiss and permitted plaintiff's previously filed second amended complaint to serve as the operative complaint. Dkt. 101.

Defendants subsequently filed the instant motion to dismiss plaintiff's second amended complaint. Dkt. 103. Plaintiff moved for permission to file an overlength response brief to include an additional three (3) pages beyond the twenty-four (24) page limit. Dkt. 110. Defendants, in their reply to the motion to dismiss argue, in part, that plaintiff's response brief should be stricken, or not considered, because it was filed three days late. Dkt. 112.

1    In his second amended complaint, plaintiff alleges violations of his Fourteenth

2    Amendment rights under 42 U.S.C. § 1983 and under Title II of the Americans with

3    Disabilities Act ("ADA"). Dkt. 87, at 3-4. Specifically, plaintiff alleges defendants Sgt.

4    Fitzwater and C/O Lewis "knowingly engaged in ill will and reckless indifference" to

5    plaintiff's broken leg by denying plaintiff's requests to remain out of his cell at night "for

6    medical reasons", and that he be placed in disability housing to engage in physical

7    therapy "recommended by outside orthopedic specialist[.]" *Id.* Plaintiff also alleges

8    defendants violated the ADA by moving other "non-qualifying detainees" to the disability

9    housing dorm but denied his request to be moved. *Id.*

10    Plaintiff alleges he was a pretrial detainee housed at Kitsap County Jail (KCJ)

11    from April 5, 2017 through December 28, 2017. Dkt. 87, at 5. He claims while he was

12    housed in Central-D-Unit, Jail administration ordered that the unit be temporarily split

13    tier between the top and bottom tiers, meaning detainees were permitted to be out of

14    their cells at separate times of the day. *Id.* Plaintiff contends this caused a serious

15    "delay of the progress of necessary therapy to repair the range of motion of his left leg

16    knee recommended by his orthopedic specialist on April 25, 2017." *Id.*

17    Plaintiff indicates, on May 27, 2017, after the unit went split-tier, he asked

18    classification C/O Campbell to be moved to the disability housing dorm "due to limited

19    time to engage in physical therapy before bed to help with several conditions back pain,

20    shoulders, wris[t], hip disfunction." Id., at 5, 8. C/O Campbell instructed plaintiff to file a

21    request and if the unit did not return to normal operation that he would consider moving

22    plaintiff to the dorm. *Id.*

23

24

25

1    Plaintiff indicates on May 30, 2017, when the tier remained split, he asked C/O

2    Lewis "about movement at night or some other option to get out the cell to engage in

3    physical therapy exercise" and C/O Lewis responded he wasn't getting out of his cell

4    and that he could file a grievance if he disagreed. *Id.*, at 9.

5    Plaintiff states that on May 30, 2017, he filed a grievance asking to get out of his

6    cell to engage in physical therapy at night so that he could show progress on the range

7    of motion of his knee at his next orthopedic appointment. *Id.* Plaintiff states his

8    grievance was denied by Sgt. Fitzwater stating "medical has no say over when you can

9    be out. That is determined by your housing." *Id.*, at 9. He states that he appealed the

10   denial of his grievance to Lt.  Sapp, who upheld the denial of his grievance stating his

11   rights were not being violated and that "you can't walk so I cannot seem to understand

12   why being out at night would be beneficial to you medically." *Id.*, at 10. Plaintiff indicates

13   he appealed to Chief Rufener who also denied his grievance. *Id.*

14   Plaintiff contends on June 9, 2017, c/o Lewis and Sgt. Fitzwater "intentionally

15   engaged in adverse acts of discrimination" by moving non-disabled inmates to the dorm

16   for better privileges after the unit went split-tier. *Id.*, at 11. Plaintiff filed a grievance and

17   Sgt. Fitzwater denied his grievance stating "there is no medical reason for you to be

18   moved to the dorm." *Id.* Plaintiff appealed the denial of his grievance and on June 23,

19   2017, Lt. Sapp responded that "the decision to move you to the dorm now is because

20   medical feels it would be more beneficial at this stage of your healing." *Id.*, at 13.

21   Plaintiff contends "it wasn't until 28 days after fil[ing] discrimination complaint against

22   defendants C/O Lewis and Sgt. Fitzwater" that Lt. Sapp made the decision to move

23   plaintiff to the dorm. *Id.*, at 6.

24

25

REPORT AND RECOMMENDATION - 4

Plaintiff attaches copies of his grievances and copies of his medical records for the relevant period to his complaint which are considered as part of the complaint. Dkt. 87-1.

Plaintiff requests "independent assessment of delay of the physical therapy to determine if the interference by C/O Lewis and Sgt. Fitzwater's actions caused long term damage, limitation of function, or the need for prolong treatment . . .pay the cost for physical therapy they interfered with, pay the cost for depriving plaintiff and violating plaintiff's rights under (ADA) […] and deliberately discriminating against plaintiff, pain and unnecessary suffering, and any other relief the Court finds violated plaintiff['s] constitutional rights." Dkt. 87, at 4.

<u>DISCUSSION</u>

A. <u>PLAINTIFF'S MOTION TO FILE OVERLENGTH RESPONSE BRIEF AND DEFENDANTS' REQUEST TO STRIKE PLAINTIFF'S RESPONSE</u>

Plaintiff has moved for permission to file an overlength brief in response to defendants' motion to dismiss. Dkt. 110. Defendants, in their reply to plaintiff's response argue, in part, that the Court should decline to consider plaintiff's response brief entirely because it was filed three days late, on November 15, 2019, instead of November 12, 2019. Dkt. 112.

The Court notes that pro se litigants "are entitled to some latitude and leniency with procedural matters." *Perrotte v. Johnson*, 2017 WL 35499 (E.D. Cal., Jan. 3, 2017); *see, e.g., Haines v. Rowe*, 449 U.S. 5, 9 (1980) (discussing less stringent pleading standard applicable to pro se litigants) (*citing Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (affording pro se litigant leniency with regard to compliance with local rules and civil rules of procedure

1  pertaining to discovery matters). The Ninth Circuit has also expressed that "[c]ases

2  should be decided upon their merits whenever reasonably possible." *Eitel v. McCool,*

3  782 F.2d 1470, 1472 (9th Cir.1986); *Taylor v. O'Sullivan*, No. C13-1479-JCC, 2013 WL

4  6728822, at *2 (W.D. Wash. Dec. 20, 2013) (declining to dismiss action where amended

5  complaint was filed late).

6      The Court notes that here, plaintiff's delay in filing his response brief was only

7  three days, and defendants do not argue that they were prejudiced in any specific way

8  by this minor delay.[1] In light of plaintiff's *pro se* status, and the Court's preference to

9  decide cases on the merits, the Court should grant plaintiff's motion to file his overlength

10  response brief (Dkt. 110), deny defendants' request to strike the response brief (Dkt.

11  112), and consider defendants' motion to dismiss based on the full record before the

12  Court.

13  B.  <u>STANDARD OF REVIEW – MOTION TO DISMISS</u>

14      The Court's review of a motion to dismiss under Federal Rule of Civil Procedure

15  (FRCP) 12(b)(6) is limited to the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668,

16  688 (9th Cir. 2001). The Court held in *Ashcroft v. Iqbal*, 680 U.S. 662, 678 (2009):

17  "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

18  its face" must be contained in the complaint in order to survive a motion to dismiss

19  under FRCP 12(b)(6). A pro se complaint must be liberally construed. *Mangiaracina v.*

20  *Penzone,* 849 F.3d 1191, 1195 (9th Cir. 2017). All material factual allegations in the

---

[1] The Court notes that although plaintiff does not provide a specific reason or explanation for filing his response brief three days after the deadline, he does make reference in a previous motion, to encountering some difficulties obtaining photocopies related to his litigation. *See*, Dkt. 105.

1    complaint "are taken as admitted," and the complaint is to be liberally "construed in the

2    light most favorable" to the plaintiff. *Id.*; *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

3         A claim is plausible on its face if the pleaded facts allow the court to draw the

4    reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft,*

5    556 U.S. at 678. When evaluating an FRCP 12(b)(6) motion, the court may only

6    consider the complaint, materials incorporated into the complaint by reference, and

7    matters of which the court may take judicial notice. *Khoja v. Orexigen Therapeutics,*

8    *Inc.,* 899 F.3d 988, 998-99, 1002-03 (9th Cir. 2018). The Court does not resolve factual

9    disputes at the pleading stage. *Khoja,* at 1003.

10         A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the

11    complaint. *Navarro v. Block,* 250 F.3d 727, 732 (9th Cir. 2001). The Federal Rules of

12    Civil Procedure require the plaintiff to provide a short and plain statement of the claim

13    showing that the pleader is entitled to relief and that gives defendants fair notice of the

14    grounds upon which the claim rests. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct.

15    1955, 1965, 167 L.Ed.2d 929 (2007). Although specific detail is not required to survive a

16    motion to dismiss, every complaint must at least plead "enough facts to state a claim for

17    relief that is plausible on its face." *Id.* at 1974. A pro se litigant is entitled to notice of the

18    deficiencies in the complaint and an opportunity to amend, unless the complaint's

19    deficiencies cannot be cured by amendment. *See Broughton v. Cutter Labs.,* 622 F.2d

20    458, 460 (9th Cir.1980).

21         In reviewing a motion to dismiss, the court construes the facts and inferences in

22    the light most favorable to the non-moving party. *Thompson v. Davis,* 295 F.3d 890, 895

23    (9th Cir.2002). However, "[f]actual allegations must be enough to raise a right to relief

24

25

REPORT AND RECOMMENDATION - 7

1     above the speculative level on the assumption that all the allegations in the complaint

2     are true." *Bell,* 127 S.Ct. at 1964–65. The court is not required to "accept as true

3     allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

4     inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001)

5     *amended on other grounds,* 275 F.3d 1187 (9th Cir. 2001).

6     **C. Fourteenth Amendment – Pretrial Detainee Denial of Medical Care**

7           Plaintiff alleges defendants Lewis and Fitzwater violated his Fourteenth

8     Amendment rights by denying his requests to be out of his cell at night to exercise his

9     leg and to be moved to a different housing unit.

10          Claims for inadequate medical care of pre-trial detainees arise under the Due

11    Process Clause of the Fourteenth Amendment. *Gordon v. County of Orange*, 888 F.3d

12    118, 1124-25 (9th Cir. 2018).

13          A pre-trial detainee must plead the following elements.

14
15
16
17
> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

18    *Gordon*, 888 F.3d at 1125. "A 'serious' medical need exists if the failure to treat a

19    prisoner's condition could result in further significant injury or the 'unnecessary and

20    wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at

21    104). The third element of a pretrial detainee's inadequate medical care claim requires

22    only that defendant's conduct be "objectively unreasonable." *Gordon*, 888 F.3d at 1125.

23    Unlike Eighth Amendment claims, Fourteenth Amendment claims do not require that the

24    plaintiff establish that the defendant subjectively knew of an excessive risk to inmate

25

1    health or safety. *Id.* Nonetheless, "the plaintiff must prove more than negligence but less

2    than subjective intent—something akin to reckless disregard." *Id.*

3        Here, plaintiff's allegations with respect to defendants Lewis and Fitzwater

4    amount to a disagreement with their responses to his requests to be allowed out of his

5    cell at night and initial denial of his requests to be moved to a different housing unit. But

6    even assuming defendants Lewis and Fitzwater made an intentional decision regarding

7    plaintiff's conditions of confinement by not allowing him out of his cell at night and

8    initially denying his requests to be moved to the dorm, plaintiff fails to allege facts to

9    support a constitutional violation. Specifically, plaintiff fails to state facts which could

10   plausibly support a claim that defendants' decisions placed plaintiff at substantial risk of

11   suffering serious harm, that a reasonable official under the circumstances would have

12   appreciated the high degree of risk involve in making those decision, and that plaintiff

13   was injured as a result of defendants' actions. Further, the exhibits plaintiff attaches to

14   and incorporates into his complaint undermine his Fourteenth Amendment claim rather

15   than support it.

16       Plaintiff states he requested to be allowed out of his cell at night because being

17   confined to his bed and wheelchair caused him discomfort in his back, shoulders, wrist,

18   hip, spine and lower left leg and knee and made it more difficult for him to sleep. Dkt.

19   87, at 5. Plaintiff alleges physical therapy was "ordered" by his outside orthopedic

20   specialist and references his attached medical record dated April 25, 2017.[2] *Id.*, at 5,

21

22   [2] The Court also notes that plaintiff grieved the failure to provide him with adequate medical care,
     including physical therapy, and to schedule his follow-up appointments, and that complaint was forwarded
23   to Health Services. Dkt. 87-1. Plaintiff does not allege any facts to support that defendants were
     interfering with or preventing him from attending any formal physical therapy conducted or prescribed by
24   medical personnel at the jail or by his outside orthopedist.

25

REPORT AND RECOMMENDATION - 9

1    31; Dkt. 111, at 10. But the medical record plaintiff cites to does not order any formal

2    physical therapy or specific exercises but directs only that plaintiff should remain non-

3    weightbearing and that he should work on "gentle ROM" 0-120 degrees. Dkt. 87, at 31.

4         In fact, the first mention made of physical therapy in plaintiff's medical records,

5    which he attaches to his complaint, is in the record dated August 14, 2017, more than a

6    month after plaintiff was moved to the dorm. *Id.*, at 37. This record also does not

7    prescribe physical therapy but states only that plaintiff "could perform physical therapy if

8    out of jail[.]" *Id.* The medical records indicate that it is not until September 21, 2017, that

9    plaintiff was actually given a prescription for physical therapy and told he could perform

10   it if he was out of jail. Dkt. 87, at 31-39.

11        Plaintiff also asserts in his response to defendants' motion that he was under

12   doctor's orders to refrain from staying in his bed and wheelchair all day. Dkt. 111, at 9.

13   Again, the medical records plaintiff attaches to the complaint from his orthopedist make

14   no mention of this. Dkt. 87-1. Rather, the medical records direct that plaintiff remain

15   non-weightbearing on his injured leg throughout the period in question (April 25, 2017 to

16   June 23, 2017, when it appears plaintiff was moved to the dorm). The records also

17   indicate, and plaintiff acknowledges, that he had been provided a wheelchair in order to

18   comply with the instruction that he remain non-weightbearing. Dkt. 87, at 8, 31-37. The

19   Court again notes here that the first mention made of physical therapy in plaintiff's

20   medical records was not until August 14, 2017, more than a month after plaintiff was

21   moved to the dorm, and no actual prescription was given until September 21, 2017. *Id.*

22        Even assuming plaintiff was told by his doctor to refrain from staying in his bed or

23   in his wheelchair all day, plaintiff does not identify what non-weightbearing therapeutic

24

25

REPORT AND RECOMMENDATION - 10

exercises he was required to do for his leg or why the opportunity to perform those exercises during the substantial period of time he was permitted out of his cell during the day, as opposed to in the evening, was either insufficient, or put him at risk of serious harm. Plaintiff's assertions that he believed he would generally experience less discomfort and would sleep better if he were allowed out at night does not support a claim that defendants denial of that request placed him at risk of serious harm or that the decision was objectively unreasonable.

Jail staff's responses to plaintiff's grievances, which plaintiff attaches to his complaint, also do not support a claim that their actions in denying plaintiff's requests to be allowed out at night placed plaintiff at substantial risk of serious harm or were objectively unreasonable. Dkt. 87-1. Those responses explain that plaintiff's housing was dictated by his classification level, that plaintiff was placed on the lower tier of the unit because of his injury, that he had all day to be out of his cell, that he could also use the time at night to perform exercises in his cell, and that because plaintiff could not walk it was unclear why plaintiff believed being out at night would be beneficial to him medically. *See* Dkt. 87, at 14. Considering the entire complaint, including plaintiff's attachments, the Court concludes that plaintiff's complaint fails to allege sufficient facts to support a plausible claim that defendants' refusal to allow him out of his cell at night put him at risk of suffering serious harm or was objectively unreasonable.

For many of the same reasons, plaintiff fails to allege facts to support a claim that defendants' initial denial of his requests to be moved to a different housing unit placed him at risk of suffering serious harm or was objectively unreasonable as required to state a claim under the Fourteenth Amendment. Plaintiff's claim in this regard appears

1    to be based upon the same facts and reasoning as his claim that defendants violated

2    his rights by failing to allow him out of his cell at night. Apart from being allowed out of

3    his cell later in the day, plaintiff complaint does not otherwise explain how being in the

4    dorm would be otherwise beneficial to him with regards to his medical condition. Thus,

5    for the same reasons discussed above, the Court finds plaintiff fails to allege sufficient

6    facts to support a claim that defendants' denials of his requests to be moved to the

7    dorm placed him at risk of suffering serious harm or were objectively unreasonable.

8         Plaintiff also fails to allege facts that would show that defendants failed to take

9    reasonable measures to abate any substantial risk to plaintiff's leg. The records,

10   including grievance responses, that plaintiff attaches and incorporates by reference in

11   his complaint indicate that plaintiff's medical complaints were referred to the Health

12   Services Administrator at the Jail, that plaintiff was informed that medical would notify

13   defendants or classification staff if and when it would be medically beneficial to move

14   him to the dorm, and that plaintiff was moved to the dorm several weeks after his initial

15   request based on medical's determination that he was at the stage of his recovery when

16   the transfer would be medically beneficial. Dkt. 87, at 8-23.

17        Plaintiff's medical records generally support these responses, reflecting that

18   plaintiff was instructed to remain non-weightbearing through his August 14, 2017,

19   orthopedic appointment, more than a month after plaintiff was moved to the dorm. *Id.*, at

20   31-41. As previously noted, the August 14, 2017, appointment is also the first time

21   physical therapy is mentioned in plaintiff's medical records as something that plaintiff

22   "could perform if out of jail"; not until September 21, 2017, was plaintiff actually provided

23   a prescription for physical therapy. Dkt. 87, at 37-41.

24

25

REPORT AND RECOMMENDATION - 12

1    Finally, plaintiff fails to allege facts to support the claim that defendants' failure to

2    allow him out of his cell at night or move him to the dorm housing at the time of his

3    request caused him further injury. In his request for relief plaintiff asks for an

4    independent assessment of the delay of physical therapy to determine if long term

5    damage, limitation of function and prolonged treatment are necessary. Dkt. 87, at 5.

6    Plaintiff fails to allege facts which would plausibly support a causal relationship between

7    any alleged acts by defendants and any injury to plaintiff. Moreover, the medical records

8    plaintiff attaches to the complaint do not indicate any concern regarding the status or

9    progress of plaintiff's recovery during this period. Dkt. 87, at 31-41. In fact, the medical

10   records generally appear to reflect positive progress in plaintiff's recovery and that the

11   range of motion of his knee continuously improved at each subsequent appointment. *Id.*

12   And, as previously noted, the medical records indicate that physical therapy was not

13   mentioned or prescribed until several months after plaintiff was moved to the dorm.[3] *Id.*

14   Accordingly, the Court concludes plaintiff's complaint fails to state a claim under

15   the Fourteenth Amendment and his claims should be dismissed.

16   **D. ADA Claim**

17   Plaintiff also alleges defendants violated his rights under the ADA when they

18   denied his request to be moved to the dorm and moved other non-disabled inmates to

19   the dorm ahead of him. Title II of the ADA provides in relevant part:

20          [N]o qualified individual with a disability shall, by reason of such
            disability, be excluded from participation in or be denied the

21

22   [3] The Court notes that in a prior motion plaintiff mentions for the first time that he now has some difficulty
     with his range of motion of his knee and believes this may be due to the defendants' actions. Dkt. 110.
23   However, even if the Court were to consider this sufficient to allege the injury element of the claim,
     despite the fact that plaintiff's attached medical records tend to undermine such an allegation, plaintiff
24   fails to allege sufficient facts to meet the other elements of a Fourteenth Amendment claim.

25

REPORT AND RECOMMENDATION - 13

> benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. To prove his discrimination claim, plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); 42 U.S.C. § 12132.

A potential defendant under Title II of the ADA is any "public entity" which includes, among others, "any State or local government"; and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131. Thus, under Title II of the ADA, "individual defendants may not be sued in their individual capacities." *Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066–67 (D. Or. 2001). Individual officials may be sued in their official capacities "because suing an individual in his official capacity is treated the same as suing the entity itself." *Id.*; *Sherman v. Kelly*, No. 3:16-CV-00865-MO, 2017 WL 539583, at *2 (D. Or. Feb. 8, 2017).

A public entity can be liable for damages under Title II of the ADA only "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons."[4] *Mark H. v. Lemahieu*, 513 F.3d 922,

---

[4] The Court notes that a showing of deliberate indifference is not required for claims for injunctive relief but is required for claims for damages. *See, e.g.*, *Armbrester v. Alameda Cty.*, No. 17-CV-05231-LB, 2018 WL 5780044, at *4 (N.D. Cal. Nov. 1, 2018) (deliberate-indifference test required for ADA claims for money damages); *Huezo v. L.A. Cmty. Coll. Dist.*, 672 F. Supp. 2d 1045, 1046 (C.D. Cal. 2008) ("Liability

1    938 (9th Cir. 2008). Deliberate indifference requires: (1) "knowledge that a harm to a

2    federally protected right is substantially likely, and" (2) "a failure to act upon that the (sic)

3    likelihood." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2008). The first

4    prong is satisfied when the plaintiff identifies a "specific, reasonable and necessary"

5    accommodation that the entity has failed to provide, and the plaintiff notifies the public

6    entity of the need for accommodation or the need is obvious or required by statute or

7    regulation. *Id.*; *Updike v. Multnomah Cty.,* 870 F.3d 939, 951 (9th Cir. 2017), *cert.*

8    *denied sub nom. Multnomah Cty., Or. v. Updike*, 139 S. Ct. 55, 202 L. Ed. 2d 19 (2018)

9    (internal citations and quotations omitted).

10         The second prong is satisfied by showing that the entity deliberately failed to

11   fulfill its duty to act in response to a request for accommodation. *Id.*, at 1139–40. "To

12   meet the second prong, the entity's failure to act must be a result of conduct that is

13   more than negligent, and involves an element of deliberateness." *Updike,* 870 F.3d at

14   951.

15         Here, plaintiff has not sued a public entity and does not specify the capacity in

16   which the individual defendants are sued. Thus, the Court presumes the defendants are

17   sued in their individual capacities. See *U.S. ex rel. Teresa Teater v. Schrader*, No.

18   CV05–623–HU, 2006 1030165, at *4 (D. Or. Apr. 18, 2006) (Where officials are named

19   in a complaint, courts presume they are "necessarily sued in their personal capacities ...

20   even if the complaint does not explicitly mention the capacity in which they are sued.")

21   (*citing Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999)). Because the defendants

22

23   _____

     under the ADA ... can be established without a showing of discriminatory intent. To recover compensatory
24   damages, however, intentional discrimination must be proven.").

25

1    may not be sued in their individual capacities under Title II of the ADA, defendants'

2    motion should be granted and plaintiff's claims should be dismissed with prejudice.

3    Even if the Court assumes that plaintiff's second amended complaint is brought

4    against defendants in their official capacities, the complaint would fail to state a claim.

5    Plaintiff's complaint fails to present any facts to support a plausible claim that

6    defendants denied his request to be moved to the dorm because of his disability. *See,*

7    *e.g., Curry v. Tilton*, No. C-07-0775 EMC PR, 2012 WL 967062, at *12 (N.D. Cal. Mar.

8    21, 2012) (exclusion from [program] was not based on the fact or perception that he had

9    a disability and instead was due to the fact that he did *not* have a qualifying disability);

10   *see Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976 (9th Cir.

11   1997) (patron excluded from public transit system's reduced fare program due to his

12   failure to provide updated medical information failed to establish ADA or Rehabilitation

13   Act violation because transit system's policy did not discriminate on the basis of a

14   disability and was not required to make reasonable modifications to the eligibility

15   requirements for patron).

16   Instead the grievance responses attached to plaintiff's complaint indicate that

17   defendants, and other jail staff, denied plaintiff's initial requests to be moved because of

18   his classification level, the fact that plaintiff was ordered to be non-weightbearing on his

19   injured leg (meaning the ability to be "unlocked" all day made no difference to his

20   medical care), and the fact that medical had not indicated that transfer to the dorm was

21   necessary for medical reasons at the time of his request. Dkt. 87, at 22-23. The

22   grievance responses also indicate that plaintiff was subsequently moved to the dorm

23

24

25

several weeks after his initial request when it was determined by medical that it would be more beneficial to plaintiff to be in the dorm during the later stage of his recovery. *Id.*

With respect to his claim that other non-disabled inmates were moved to the dorm before him, the grievance responses attached to plaintiff's complaint reflect that the other inmates were classified lower than plaintiff and thus could be moved to another unit immediately. *Id.* The responses further state that these decisions were based upon the "use of a verified assessment tool" used for the classification system. *Id.* The responses indicate plaintiff was not set for reclassification review until July, but that he was moved to the dorm earlier, in late June, based upon notification from medical that it would be more beneficial to his recovery at that stage. *Id.* The grievance responses also note that if plaintiff had any major infractions that his housing in the dorm would be in jeopardy. *Id.*

Plaintiff offers no other facts to indicate that these explanations, contained in his own complaint, are false or pretextual and that defendants instead chose to deny his requests for transfer because he was disabled. Plaintiff also offers no facts to support a claim that his request to be moved to the dorm was a specific, reasonable and necessary accommodation for his disability at the time. As discussed above, the attachments to the complaint indicate that plaintiff was under medical orders to be non-weightbearing during this period and he presents no facts to support a claim that moving him to the dorm during this period was reasonable and necessary to accommodate his disability. Dkt. 87, at 31-41.

Therefore, even construing plaintiff's complaint as brought against defendants in their official capacities, he fails to support his claim with facts plausibly showing that

1  defendants violated his rights under the ADA. *See Iqbal*, 556 U.S. at 663, 129 S.Ct.

2  1937 (the court is not obligated to accept as true "threadbare recitals of a cause of

3  action's elements, supported by mere conclusory statements.").

4        For the reasons above, the Court recommends that defendants' motion to

5  dismiss (Dkt. 103) be GRANTED in its entirety and that plaintiff's second amended

6  complaint be dismissed with prejudice. The Court recommends that plaintiff not be

7  granted further leave to amend his complaint. Plaintiff has been given the opportunity to

8  amend his complaint twice previously and has still failed to allege sufficient facts to state

9  a viable claim. *See Chodos v. West Publishing,* 292 F.3d at 1003 (9th Cir. 2002)

10  (discretion to deny leave to amend is particularly broad where plaintiff has had prior

11  opportunities to amend); *see also Williams v. Felker*, 467 F. App'x 580, 582 (9th Cir.

12  2012). Furthermore, based on the facts alleged in the second amended complaint, it

13  does not appear to the Court that plaintiff is capable of stating a viable claim for relief.

14                      IN FORMA PAUPERIS STATUS ON APPEAL

15        The Court must also decide whether plaintiff's *in forma pauperis* status should

16  continue on appeal. *See* 28 U.S.C. §1915(a)(3) ("an appeal may not be taken *in forma*

17  *pauperis* if the trial court certifies in writing that it is not taken in good faith").  The Court

18  must determine whether appeal is frivolous or malicious, or whether it fails to state a

19  claim on which relief may be granted.  *See* 28 U.S.C. §1915(e)(2)(B)(i)&(ii).

20        While the Court was not persuaded on the merits of plaintiff's claim, there is no

21  evidence that an appeal would be frivolous or taken in bad faith. Accordingly, the Court

22  recommends that *in forma pauperis* status should continue on appeal.

23

24

25

CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court GRANT plaintiff's motion to file an overlength response brief (Dkt. 110), DENY defendants' request to strike plaintiff's response brief as untimely (Dkt. 112), and GRANT defendants' motion to dismiss (Dkt. 103) and dismiss plaintiff's second amended complaint with prejudice.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **May 8, 2020**, as noted in the caption.

Dated this 15th day of April, 2020.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19